UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| JAMES BRANDON JORDAN, | ) | |
|---|---|---|
| | ) | Case Nos. 1:17-cv-62, 1:15-cr-12 |
| *Petitioner*, | ) | |
| | ) | Judge Mattice |
| v. | ) | |
| | ) | Magistrate Judge Steger |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| *Respondent.* | ) | |

## **MEMORANDUM OPINION**

Federal inmate James Brandon Jordan has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, to which the United States has responded. Jordan has not filed a reply, and the deadline to do so has passed. Having considered the pleadings and the record, along with the relevant law, the Court finds there is no need for an evidentiary hearing[1] and Jordan's § 2255 motion will be denied.

**I.  BACKGROUND FACTS AND PROCEDURAL HISTORY**

On December 4, 2013, Manchester Police Department officers executed a search warrant on Petitioner's residence. (Crim. Doc. 351 at ¶ 34).[2] Petitioner was present and the police found approximately five ounces of methamphetamine hidden around the house, as well as $4,000 in cash and 176 morphine tablets. (*Id.*). On May 27, 2015,

---

[1] An evidentiary hearing is required on a § 2255 motion unless the motion, files, and record conclusively show that the prisoner is not entitled to relief. *See* 28 U.S.C. § 2255(b). It is the prisoner's ultimate burden, however, to sustain his claims by a preponderance of the evidence. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). Accordingly, where "the record conclusively shows that the petitioner is entitled to no relief," a hearing is not required. *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citation omitted).

[2] For ease of reference, docket entries in the underlying criminal action, Case No. 1:15-cr-12, are cited as "Crim. Doc. #" and those in § 2255 action, Case No. 1:17-cv-62, are cited as "Civ. Doc. #".

Petitioner, along with thirteen others, was indicted in a twenty-two count Superseding Indictment. (Crim. Doc. 13). Jordan was charged with conspiracy to distribute and possess with the intent to distribute fifty grams or more of methamphetamine and five hundred grams or more of a mixture and substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846 (Count Two), and possession with intent to distribute fifty grams or more of a mixture containing methamphetamine (Count Eleven). (*Id.*).

According to the Revised Presentence Investigation Report ("PSR"), Jordan was held responsible for 2.608 kilograms of ice methamphetamine, resulting in a base offense level of 36. (Crim. Doc. 351 at ¶¶ 48, 49); USSG § 2D1.1(c)(2) (base offense level of 36 for at least 1.5 but less than 4.5 kilograms of "ice" methamphetamine). Due to (i) a Tennessee conviction for aggravated burglary and (ii) a Tennessee conviction for attempt to possess with intent to distribute a controlled substance, Petitioner was deemed a career offender under the Federal Sentencing Guidelines. (*Id.* at ¶¶ 55 62, 65); USSG. § 4B1.1(a). The statutory maximum sentence for a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) is life imprisonment; after the career offender enhancement, his offense level was 37. (*Id.* at ¶ 55); USSG. § 4B1.1(b).

After reductions for acceptance of responsibility, the PSR calculates a total offense level of 34. (*Id.* at ¶ 58). Petitioner's criminal history standing alone resulted in a criminal history category of VI; his career offender designation also required a criminal history category of VI. (*Id.* ¶¶ 73-74); USSG. § 4B1.1(b). Based on his offense level and category VI criminal history, the guideline imprisonment range was 262 to 327 months. (*Id.* at ¶ 96); USSG Sentencing Table, Ch. 5, Pt. A (2015). Pursuant to 21 U.S.C. §§ 846 and

841(b)(1)(A), Petitioner was subject to a mandatory minimum sentence of ten years. (*Id.* at ¶ 95).

On August 25, 2015, Petitioner entered into an Amended Plea Agreement (Doc. 156), in which he agreed to plead guilty to Count Two for conspiracy to possess with intent to distribute and the Government agreed to dismiss remaining Count Eleven for possession with intent to distribute at sentencing. (Crim. Doc. 156). On February 26, 2016, the Court accepted Petitioner's plea and sentenced him to a below-the-guidelines term of 168 months imprisonment and five years of supervised release. (Crim. Doc. 373; *see* Doc. 374 at 2). In the Amended Plea Agreement, the Petitioner agreed not to file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack his conviction or sentence, with two exceptions: he retained the right to file a § 2255 motion related to either prosecutorial misconduct or ineffective assistance of counsel. (Crim. Doc. 156 at ¶ 12(b)).

Petitioner filed a Notice of Appeal on March 14, 2016 (Doc. 401) and was granted leave to proceed in forma pauperis. (Crim. Doc. 455). On September 27, 2016, the appeal was dismissed on Petitioner's motion. (Crim. Doc. 518). He did not submit substantive pleadings or briefing in his direct appeal.

On March 3, 2017, Petitioner filed a Motion to Vacate under 28 U.S.C. § 2255 (Civ. Doc. 1), challenging his conviction on four grounds. First, he argues neither of his prior convictions constitute predicate convictions to support a career offender designation pursuant to § 4B1.1 of the Sentencing Guidelines. (*Id.* at 4, 8). He contends his Tennessee conviction for aggravated burglary can no longer be considered a crime of violence after *Johnson v. United States*, 135 S. Ct. 2551 (2015), and that his attempt conviction is also not a predicate offense. (*Id.*). He next challenges the disparity between his sentence and

that of co-defendant, Jesse Alan Trimue, who Petitioner claims was held responsible for the same amount of methamphetamine. (*Id.* at 6-7). Finally, he argues his counsel was ineffective because Petitioner asked his lawyer to present argument regarding his prior convictions, but the seriousness of his prior convictions was overstated. (*Id.* at 5). Petitioner indicates he did not raise these issues previously because he was cooperating with authorities and his lawyer believed challenging his career offender enhancement would cause him to lose credit for acceptance of responsibility in his sentencing computation. (*Id.* at 9).[3]

The Government responds that Petitioner waived his right to collaterally attack his sentence or conviction, except for claims of ineffective assistance of counsel and prosecutorial misconduct. (Civ. Doc. 3 at 3). According to the Government, his challenges do not fall into either of these categories. (*Id.* at 3). The Government next argues the claims other than that for ineffective assistance of counsel are procedurally defaulted because they were not raised on direct appeal. (*Id.*). Substantively, Respondent contends Guideline calculation errors have no constitutional significance and, in any event, a *Johnson*-based challenge to Jordan's career offender enhancement is foreclosed by subsequent caselaw. (*Id.* at 4-5). Petitioner's sentencing disparity claim, meanwhile, is undeveloped. (*Id.* 5-6). Finally, the Government argues Petitioner failed to show his counsel's performance was deficient or that but for this deficiency, the outcome would have been different. (*Id.* at 7-8).

---

[3] To be precise, Petitioner claims none of his arguments were previously presented "because I cooperated with authorities & my lawyer thought that by arguing any of these grounds may lose me my acceptance of responsibility departure. Didn't present these on my counsel's request." (Doc. 1 at 9). In context, this appears to refer to Petitioner's substantive arguments related to his career offender designation.

## II. LEGAL STANDARD

After a defendant has been convicted and exhausted his appeal rights, a court may presume that "he stands fairly and finally convicted." *United States v. Frady*, 456 U.S. 152, 164 (1982). A court may grant relief under 28 U.S.C. § 2255, but the statute "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Rather, collateral attack limits a movant's allegations to those of constitutional or jurisdictional magnitude, or those containing factual or legal errors "so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (citation omitted); *see also* 28 U.S.C. § 2255(a).

## III. DISCUSSION

### A. Waiver

The United States Court of Appeals for the Sixth Circuit has consistently held that plea agreement waivers of § 2255 rights are enforceable. *See Cox v. United States*, 695 F. App'x 851, 853 (6th Cir. 2017); *Davila v. United States*, 258 F.3d 448, 450 (6th Cir. 2001). "[I]t is well settled that a defendant in a criminal case may waive 'any right, even a constitutional right,' by means of a plea agreement." *Cox*, 695 F. App'x at 853 (*quoting United States v. Fleming*, 239 F.3d 761, 763-64 (6th Cir. 2001)) (internal quotation marks omitted). "To be valid, the waiver simply must have been entered into knowingly and voluntarily." *Id.* "[W]here developments in the law later expand a right that a defendant has waived in a plea agreement, the change in law does not suddenly make the plea involuntary or unknowing or otherwise undo its binding nature." *In re Garner*, 664 F. App'x 441, 442 (6th Cir. 2016) (*quoting United States v. Bradley*, 400 F.3d 459, 463 (6th Cir. 2005)) (internal quotation marks omitted). Thus, even if a change in the law could offer Petitioner some relief, he has waived the right to challenge his sentence on this basis.

Indeed, Petitioner knowingly and voluntarily waived the right to challenge his sentence and convictions on any basis other than ineffective assistance of counsel or prosecutorial misconduct. He does not argue otherwise. At his plea hearing, Magistrate Judge Steger asked Petitioner if he understood he was waiving the right under 28 U.S.C. § 2255 to collaterally attack his conviction and sentence except for the limited right to assert claims of ineffective assistance of counsel and prosecutorial misconduct. (Crim. Doc. 487 at 12). Petitioner replied that he did. (*Id.*). The Amended Plea Agreement likewise indicates that the Petitioner "voluntarily, knowingly, and intentionally agrees" that he "will not file any motions or pleadings pursuant to 28 U.S.C. § 2255" except for those based on prosecutorial misconduct or ineffective assistance of counsel. (Crim. Doc. 156 at 7-9). Accordingly, to the extent his Motion to Vacate is based on anything other than prosecutorial misconduct or ineffective assistance of counsel, he has waived his right to bring it and the Motion must be denied.

Jordan's challenges to his career offender designation also fail because "a defendant cannot use a § 2255 motion to vindicate non-constitutional challenges to advisory guideline calculations." *Snider v. United States*, 908 F.3d 183, 191 (6th Cir. 2018). Like Petitioner, defendant Snider argued that intervening law removed his prior convictions from the definition of "crime of violence" in the Sentencing Guidelines, invalidating his designation as a career offender. *Id.* at 188. The Sixth Circuit held that "§ 2255 claims that do not assert a constitutional or jurisdictional error are generally cognizable only if they involved a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *Id.* (*quoting Davis v. United States*, 417 U.S. 333, 346 (1974)). That was not the case in *Snider*, as the petitioner had not argued he was actually innocent of the charged offense or the predicate offenses, and his sentence was below the

6

statutory maximum. *Id.* at 189-90, 191. The Sixth Circuit reasoned that Snider's sentence, which fell in the middle of the recommended range, could not plausibly be characterized as a fundamental defect. *Id.* at 191. This was especially true because his offense level would have been the same without the career offender enhancement. *Id.* Similarly, Jordan has not argued he is actually innocent and his sentence is in fact far below the range suggested by the Guidelines and the PSR, even were his offense level reduced to eliminate the career offender designation.

Petitioner's claim based on the disparity between the sentence he received and that of his codefendant Jesse Trimue fails for the same reason. A recent decision in this district resolves the issue succinctly:

> [W]hile a court must consider, among other things, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), the "avoidance of disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges" such that a Court's calculation of a defendant's Guidelines range incorporates the need to avoid sentencing disparities. *Gall v. United States*, 552 U.S. 38, 53 (2007). Thus, Petitioner's allegation that she is entitled to relief under § 2255 due to a sentencing disparity is, in substance, a challenge to the Court's calculation of her Guidelines range, which is not cognizable under § 2255 as set forth above.

*Allen v. United States*, No. 3:12-cr-90, 2018 WL 5983561, at *3 (E.D. Tenn. Nov. 14, 2018). Petitioner is not entitled to § 2255 relief based on his challenges to his career offender designation or any disparity between his sentence and that of his codefendant.

Finally, Petitioner did not raise any of his substantive claims on direct appeal. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citations omitted); *Regalado v. United States*, 334 F.3d

7

520, 528 (6th Cir. 2003) ("[W]here the defendant has failed to assert his claims on direct appeal and thus has procedurally defaulted, in order to raise them in a § 2255 motion he must also show either that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent."). Petitioner has not made such a showing, nor has he alleged actual innocence.

### B. Ineffective Assistance of Counsel

Jordan also claims his conviction and sentence should be vacated because his lawyer's assistance was ineffective. (Civ. Doc. 1 at 5). In *Strickland v. Washington*, the Supreme Court set forth a two-pronged test for determining whether a convicted defendant received ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* holds that a petitioner cannot establish his counsel was ineffective unless he demonstrates that (1) counsel's performance was deficient, such that counsel did not render reasonably effective assistance as measured by prevailing professional norms; and (2) he was prejudiced by the deficiency, i.e., there is a reasonable probability that but for counsel's alleged acts or omissions, the results of the proceedings would have been different. *Id.* at 687-88, 694; *Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013) (applying *Strickland* test to § 2255 claims). The failure to satisfy either prong of *Strickland* requires dismissal of the claim and relieves the reviewing court of a duty to consider the other prong. *Nichols v. United States*, 563 F.3d 240, 249 (6th Cir. 2009); *see also Strickland*, 466 U.S. at 697.

As an initial matter, Petitioner does not develop argument in favor of this or his other grounds for relief. He says he asked his lawyer "to argue over the facts of his prior convictions being held to career me out. They both overstated the seriousness of prior convictions." (*Id.*). The *Strickland* test requires a greater degree of specificity than this to

8

overcome the "strong presumption" that the challenged conduct was professionally reasonable. *Strickland* "requires the defendant to identify specific acts or omissions by counsel that were 'outside the wide range of professionally competent assistance.'" *Carter v. Bogan*, 900 F.3d 754 (6th Cir. 2018) (*quoting Strickland*, 466 U.S. at 690). Petitioner has not met this standard.

Elsewhere, Petitioner argues his burglary conviction was not a crime of violence post-*Johnson* and his attempt to possess charge should not be considered a serious offense. (Civ. Doc. 1 at 4, 8). Taken together, the Court construes Petitioner's pleadings as contending his counsel was ineffective because he failed to argue that Jordan's prior Tennessee convictions were insufficient to support a career offender designation under the Sentencing Guidelines. Petitioner's argument is undeveloped and, insofar as the Court can determine its contours, unsuccessful.

A defendant who has two or more prior felony convictions for either a crime of violence or a controlled substance offense is treated as a career offender under the Federal Sentencing Guidelines. USSG § 4B1.1(a). Depending on the crime charged and the defendant's history, the career offender designation may increase the defendant's offense level or his criminal history category, resulting in a higher guideline sentence range. *Id.* Similarly, the Armed Career Criminal Act mandates a 15-year minimum sentence for defendants who have three prior convictions for certain violent felonies and drug-related crimes. 18 U.S.C. § 924(e); *United States v. Stitt*, 139 S. Ct. 399, 403 (2018). The Sixth Circuit "has repeatedly equated the definition of 'violent felony' under the ACCA 'to the parallel determination of whether a prior conviction constitutes a "crime of violence" under USSG § 4B1.2(a).'" *Snider*, 908 F.3d at 188-89 (quoting *United States v. Bartee*, 529 F.3d 357, 359 (6th Cir. 2008)).

9

At the time of Petitioner's sentencing in February 2016, the Guidelines defined a "crime of violence" as an offense punishable by imprisonment for more than one year that also: (i) has as an element the use, attempted use, or threatened use of physical force against another person (the "use of force clause"); (ii) is burglary of a dwelling, arson, or extortion, or involves use of explosives (the "enumerated offense clause"); or (iii) otherwise involves conduct that presents a serious potential risk of physical injury to another (the "residual clause"). USSG § 4B1.2(a) (2015). Prior to the August 1, 2016 amendments,[4] the Guidelines' use of force clause and residual clause were identical to the corresponding provisions of the ACCA and the enumerated offense clause was very similar. *See Selvidge v. United States*, No. 3:16-cv-676, 2017 WL 1498020, *3 (E.D. Tenn. April 26, 2017); 18 U.S.C.A. § 924(e)(2)(B); USSG § 4B1.2(a) (2015).

Prior to Petitioner's sentencing, the Supreme Court invalidated the residual clause of the ACCA as unconstitutionally vague. *Johnson v. United States*, 135 S. Ct. 2551 (2015). Though the Guidelines include identical language in defining a career offender, the Supreme Court has since clarified that unlike the ACCA, the Sentencing Guidelines are not amenable to vagueness challenges. *Beckles v. United States*, 137 S. Ct. 886, 894 (2017); *see Selvidge*, 2017 WL 1498020 at *3 ("'Crime of violence' is defined in an almost identical manner as 'violent felony' under the ACCA… [u]nlike the ACCA, the Guidelines residual clause remains in effect."). Petitioner was not sentenced under the ACCA, but the Guidelines, rendering any *Johnson*-based challenge unsuccessful in light of *Beckles*.

Moreover, since *Johnson*, the Supreme Court of the United States has held that Tennessee aggravated burglary falls within the scope of generic burglary. *Stitt*, 139 S. Ct.

---

[4] *See Supplement to the 2015 Guidelines Manual* (U.S. Sentencing Comm'n 2015). Effective August 1, 2016, the residual clause of § 4B1.2(a)(2) was deleted and the enumerated offense clause revised to, among other things, delete the phrase "burglary of a dwelling." *Id.*

at 406-8. After *Stitt*, it is once again the law of the circuit that "Tennessee aggravated burglary represents a generic burglary capable of constituting a violent felony for ACCA purposes." *Brumbach v. United States*, 929 F.3d 791, 794 (6th Cir. 2019) (*quoting United States v. Nance*, 481 F.3d 882, 888 (6th Cir. 2007)). By extension, Tennessee aggravated burglary is a "crime of violence" under either the residual clause or the enumerated offense clause of the Sentencing Guidelines in effect when Petitioner was sentenced. *See Byrd v. United States*, No. 1:17-CV-182-HSM, 2019 WL 3021204, at *3 (E.D. Tenn. July 10, 2019) ("Accordingly, Byrd's conviction for aggravated burglary was properly considered a crime of violence for the purposes of the §2k2.1 enhancement…."); *Selvidge*, 2017 WL 1498020 at*3 (the "viability of the Guidelines residual provision means that [aggravated burglary]… qualifies as a crime of violence under a combination of the enumerated-offense, use-of-physical force, and residual clauses").

It is less clear that Petitioner's attempt crime was properly considered in determining his career offender status. According to the presentence report, in 2000 Petitioner was convicted of attempt to possess a controlled substance with intent to sell or deliver it. (Crim. Doc. 351 at ¶ 62). The Sixth Circuit recently held that "(t)he Guidelines' definition of 'controlled substance offense' does not include attempt crimes." *See United States v. Havis*, 927 F.3d 382, 387 (6th Cir. 2019). Nonetheless, the Sixth Circuit has "repeatedly held that counsel is not ineffective for failing to predict developments in the law, unless they were clearly foreshadowed by existing decisions." *Snider*, 908 F.3d at 192. Petitioner's counsel was not obligated to anticipate this development. This is particularly true where the Application Note 1 to § 4B1.2 of the Guidelines suggests attempt crimes are included in the list of controlled substance offenses identified in the Guidelines themselves. The Sixth Circuit in *Havis* rejected this

11

commentary as purporting to add an offense not otherwise enumerated in the Guidelines, and thus not subject to notice and comment and congressional review. *Havis*, 927 F.3d at 386-87. Regardless, Petitioner's counsel was not charged with this degree of foresight. Petitioner thus cannot establish that any "acts or omissions" of his counsel "fall outside the range of competency set forth under *Strickland*." *Vitatoe v. Jones*, 810 F.2d 204, *4 (6th Cir. 1986).

Finally, Petitioner cannot establish that he was prejudiced by any purported deficiency. This is so because he was sentenced to a term of imprisonment far below the sentence suggested by the Guidelines and the PSR in light of his career offender designation. At sentencing, the Court granted a motion for downward departure, indicating it would base Petitioner's sentence on a total offense level of 30, rather than offense level 34, as calculated in the PSR. (Crim. Doc. 490 at 7; Crim Doc. 351 at ¶ 58). This downward variance resulted in a guideline range of 168 to 210 months and the Court sentenced Petitioner to the bottom of this range, at 168 months. (*Id.* at 7-8). The increase in Petitioner's total offense level by virtue of the career offender designation was thus more than offset by the Court's downward variance.[5] Petitioner thus cannot establish a probability that his sentence would have been lower had his counsel successfully argued that he was not a career offender.

## IV. CERTIFICATE OF APPEALABILITY

When considering a § 2255 motion, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts. Petitioner

---

[5] Even removing Petitioner's career offender designation and *then* subtracting four offense levels to 29 yields a Guideline range of 151-188 months, leaving Petitioner's sentence soundly within range.

must obtain a COA before he may appeal the denial of his § 2255 motion. 28 U.S.C. § 2253(c)(1)(B). A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For cases rejected on their merits, a movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" to warrant a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, a movant must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. Based on the *Slack* criteria, the Court finds that a COA should not issue in this cause.

## V. CONCLUSION

For the reasons stated herein, Petitioner has failed to establish any basis upon which § 2255 relief could be granted, and his § 2255 motion will be **DENIED**. A certificate of appealability from the denial of his § 2255 motion will be **DENIED**. A separate judgment will enter.

**SO ORDERED** this 10th day of October, 2019.

                                                */s/ Harry S. Mattice, Jr.*
                                                HARRY S. MATTICE, JR.
                                                UNITED STATES DISTRICT JUDGE